# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>A DETENTION FACILITY IN THE DISTRICT<br>OF COLUMBIA UNDER RULE 41 | )<br>)<br>)<br>)<br>)<br>) |

Case No.  26-SW-59

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference)

Located within the jurisdiction of the District of Columbia, there is now concealed  *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 40 U.S.C. § 5104(e)(1)(A)(i) (Unlawful Possession of a Firearm on Capitol Grounds or Buildings). | |

The application is based on these facts:

See Affidavit in Support of Application for Search Warrant.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Peter Campopiano, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone _____ *(specify reliable electronic means).*

Date: _____2/20/2026_____

_____
*Judge's signature*

City and state:  _____Washington, D.C._____

Zia M. Faruqui
(United States Magistrate Judge)

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| A DETENTION FACILITY IN THE DISTRICT | ) Case No. 26-SW-59 |
| OF COLUMBIA UNDER RULE 41 | ) |
| | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located within the jurisdiction of the District of Columbia.
*(identify the person or describe the property to be searched and give its location)*:

See Attachment  A (incorporated by reference).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment  B (incorporated by reference).

**YOU ARE COMMANDED** to execute this warrant on or before _____March 06, 2026_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Zia M. Faruqui_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____2/20/2026_____          _____
                                                                                              *Judge's signature*

City and state:      _____Washington, D.C._____          **Zia M. Faruqui**
                                                                                        United States Magistrate Judge

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

<table>
<tr><td colspan="3" align="center"><strong>Return</strong></td></tr>
<tr><td>Case No.:<br><br>26-SW-59</td><td>Date and time warrant executed:</td><td>Copy of warrant and inventory left with:</td></tr>
<tr><td colspan="3">Inventory made in the presence of :</td></tr>
<tr><td colspan="3">Inventory of the property taken and name(s) of any person(s) seized:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br></td></tr>
</table>

<table>
<tr><td colspan="2" align="center"><strong>Certification</strong></td></tr>
<tr><td colspan="2"><br>        I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br><br>Date: _____<br><br><br><br>                              _____<br>                                       *Executing officer's signature*<br><br>                              _____<br>                                         *Printed name and title*</td></tr>
</table>

**<u>ATTACHMENT A</u>**

*Property to be searched*

The property to be searched is the D.C. Jail Central Detention Facility, located at 901 D Street, Southeast, and operated by the Department of Corrections in the District of Columbia.

## ATTACHMENT B

*Property to be seized*

1.    The items to be seized are fruits, evidence, information, contraband, or instrumentalities, in whatever form and however stored, relating to violations of 40 U.S.C. § 5104(e)(1)(A)(i) (Unlawful Possession of a Firearm on Capitol Grounds or Buildings) (the "TARGET OFFENSE") that have been committed by CARTER CAMACHO (the "SUBJECT") and other identified and unidentified persons, as described in the search warrant affidavit, specifically the tactical style clothing, including, but not limited to, the blouse, pants, and boots, worn by the SUBJECT at the time of his arrest on February 17, 2026, as depicted below:



**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A DETENTION FACILITY IN THE DISTRICT OF COLUMBIA UNDER RULE 41 | SW No. 26-sw-59 |

<u>**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41**</u>
<u>**FOR A WARRANT TO SEARCH AND SEIZE**</u>

I, Peter Campopiano, being first duly sworn, hereby depose and state as follows:

<u>**INTRODUCTION**</u>

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises of the D.C. Jail, further described in Attachment A, for the things described in Attachment B. As explained herein, there is probable cause to believe that a search of the D.C. Jail will result in the discovery of evidence of violations of 40 U.S.C. § 5104(e)(1)(A)(i) (Unlawful Possession of a Firearm on Capitol Grounds or Buildings) (the "TARGET OFFENSE").

2.    Unless otherwise noted, wherever in this affidavit I assert that a statement was made, that statement is described in substance and is not intended to be a verbatim recitation of such statement. Wherever in this affidavit I quote statements, those quotations have been taken from draft transcripts, which are subject to further revision.

3.    Unless otherwise stated, the conclusions and beliefs I express in this affidavit are based on my training, experience, and knowledge of the investigation, and reasonable inferences I've drawn from my training, experience, and knowledge of the investigation.

## **AFFIANT BACKGROUND**

4.      I am a Special Agent ("SA") with the United States Capitol Police ("USCP"). I have been employed by the United States Capitol Police since 2009. I am currently assigned as a Special Agent in the Criminal Investigations Section, where I investigate a multitude of violations of the law.

5.      I attended the Criminal Investigations Training Program in 2021 and Uniformed Police Training Program in 2009 at the Federal Law Enforcement Training Center in Brunswick, Georgia, and Cheltenham, Maryland, respectively for a combined period of nine months. I received extensive and formal on-the-job training in the provisions of Codes of the United States and District of Columbia. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code. My experience as an SA has include the investigations of cases involving the unlawful use and possession of firearms, acts of violence, public disturbance, damage or injury of property and the use of computers and the internet to commit offences.

6.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

7.      Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of the TARGET

2

OFFENSE have been committed by CARTER CAMACHO (the "SUBJECT") and other identified and unidentified persons, including others who may have been aided and abetted by, or conspiring with, the SUBJECT.

<u>**PROBABLE CAUSE**</u>

8.      On February 17, 2026, at approximately 12:04 p.m., the SUBJECT parked a white Mercedes SUV at Maryland Avenue Southwest, between First and Third Streets, in the District of Columbia.

9.      CCTV footage reviewed by USCP shows that at approximately 12:07 p.m., the SUBJECT exited from the driver's seat of the white Mercedes SUV and began running toward the United States Capitol (the "Capitol") carrying an object later determined to be a firearm. The SUBJECT was wearing apparent body armor and camouflage-style clothing, as depicted in the below screenshots of CCTV footage:





10.    The SUBJECT approached the south steps on the western side of the Capitol and began ascending the stairs, which are located within Capitol Grounds.

11.    As the SUBJECT climbed the stairs, a uniformed USCP officer asked the SUBJECT what he was carrying in his hand.

12.    The SUBJECT raised his right arm, in which he clutched a firearm, as depicted below:



13.     USCP officers ordered the SUBJECT to halt and lay on the ground. He immediately complied.

14.     USCP officers recovered the weapon, which was determined to be a Mossberg Model 88 12-guage shotgun, bearing serial number MV2154777. The shotgun was loaded with seven rounds in the tube and one in the chamber. The safety was off. An additional 17 rounds of ammunition were located in a carrier attached to the stock of the shotgun. The firearm and apparent body armor are more clearly depicted below:



15.     USCP officers secured the SUBJECT in handcuffs. They discovered a two-way radio on his person.

16.     The SUBJECT told USCP officers that his name was CARTER CAMACHO. He also told USCP officers that he was just there to talk to a Member of Congress.

17.     USCP officers and special agents reviewed CCTV footage and were able to trace the SUBJECT's path back to the white Mercedes SUV.

18.     USCP officers and special agents responded to the location of the white Mercedes SUV.

19.     The driver's door of the white Mercedes SUV was open. Responding officers conducted a protective sweep of the white Mercedes SUV to secure it and ensure that no other persons or dangerous objects were present.

20.    USCP officers and special agents were able to see what appears to be a soft-sided rifle case in the passenger compartment of the white Mercedes SUV. In addition, USCP officers and special agents were able to observe through the white Mercedes SUV windows into the tailgate area, where they saw a cardboard box with labels indicating the name "Mossberg," which is a manufacturer of firearms, including shotguns.

21.    From the time that the white Mercedes SUV was parked to the time that USCP officers conducted a protective sweep of the vehicle, no other person exited or otherwise interacted with the vehicle.

22.    A USCP special agent conducted a check of the vehicle registration, which indicated that it was registered to a FRANCISCO CAMACHO.

23.    In addition, a fixed blade knife was found on the ground approximately forty feet from the white Mercedes SUV and in the SUBJECT's path of travel between the vehicle and the location that the SUBJECT was apprehended.

24.    I know from my training and experience that the south steps on the western side of the Capitol, where the SUBJECT was located with the firearm, fall within the Capitol Grounds as defined under 40 U.S.C. § 5102, as indicated in shaded area of the below map:



25.    During an interview subsequent to his arrest, the SUBJECT indicated that he resided in Georgia. He stated that he had driven from Georgia on February 16, 2026, stayed in his car overnight at a rest area in South Carolina, and arrived in the District of Columbia on February 17, 2026.

26.    The SUBJECT stated that, after arriving in D.C., he had parked and changed from normal clothes into a camouflage style outfit and a tactical vest that he described as "scary attire."

27.    During the interview, the SUBJECT said that he had driven from Georgia with the safety of his shotgun on but had turned the safety off when exiting his car.

28.     During the interview, the SUBJECT also stated that he had left additional weapons and weapons accessories in his vehicle, including a gun case, airsoft goggles, a gas mask, a P-tool, a pocket chainsaw, pepper spray, a comb that turns into a knife, an axe, and a pocketknife. The SUBJECT said he had pepper spray, "Just in case I don't want to shoot anyone."

29.     The SUBJECT discussed his motive for entering the Capitol Grounds at length during the interview. He said that he did not intend to hurt anyone but just wanted to speak with Members of Congress. The SUBJECT indicated that he had become interested in what politicians did "behind the window, behind cameras and all that, like the lobbying." He indicated that he was frustrated that no one "was getting penalized for it." He also expressed frustration that tax dollars were going overseas.

30.     The SUBJECT also stated, in sum and substance, that he was looking at news and thought, "Why are these people still here? Why are they still in office? Why hasn't anyone done anything? Nobody wants them here. They have to be punished. I've seen so many acts of treason on the news and nothing has happened. I just get so frustrated. And I was like, 'Why not just go confront them and ask them, why are you doing this?'"

31.     The SUBJECT indicated that he was bothered by a variety of different issues that he saw politicians in general as getting away with. He stated he was disappointed that no one does anything about it. He decided to confront them. There was no one in particular that he wanted to talk to, but mainly the ones funded by AIPAC.[1] The SUBJECT described AIPAC as "an Israeli

---

[1] The SUBJECT's references to AIPAC appear to be to the American Israel Public Affairs Committee.

lobby that sends out money to politicians." He described a tracker he had seen indicating which politicians had received money from AIPAC, and thought that only five to twelve politicians had not received money.

32.     The SUBJECT indicated that he just wanted to talk to Members of Congress, "and just get them to spit the truth out. Which is why I brought the shotgun and didn't just leave it in the car. And I didn't want to hurt anyone. Which is why whenever the officer that I talked to, I just asked if I could just get in."

33.     The SUBJECT also indicated that he thought he would use the shotgun to breach a door to be able to enter the Capitol.

34.     The SUBJECT reiterated that he "just wanted answers from them. I just wanted them to be able to honestly answer . . . which is why I wear this scary attire, even though none of it's really real except for the gun itself, but you know what I'm saying, I would leave that there and scare them into speaking the truth."

35.     The SUBJECT indicated that he had not previously tried to reach out to Members of Congress.

36.     The SUBJECT told officers that he had purchased his shotgun on February 11, 2026, and picked it up on February 12, 2026. He stated that he purchased the shotgun for home defense.

37.     While reviewing the SUBJECT's property at USCP headquarters, I observed that the apparent body armor worn by the SUBJECT was a load-bearing, tactical-style plate carrier vest. Upon further inspection, it was determined that the inserted panels were not ballistically rated.

10

During the interview, the SUBJECT stated that the vest contained foam pads intended for airsoft use rather than ballistic-rated armor designed to provide protection against gunfire.

38.     USCP law enforcement officers searched the white Mercedes SUV pursuant to search warrant 26-sw-55, issued by the Honorable G. Michael Harvey, United States Magistrate Judge in the District of Columbia.

39.     Inside the vehicle, law enforcement found a number of items, including additional weapons, a gas mask, several items of tactical style clothing, a book apparently on how to make bombs titled "Improvised Munitions Black Book," and two journals. Inside one of the journals, a note, depicted below, stated, "My ojbtive is to kill all APICA members and croupt people of the senet/state and to fre the U.S.A. From this point all I care about is humanity to thrive and be free from the Jude. [sic]"



The journal appeared to have further entries regarding the SUBJECT's plan for coming to the Capitol, including earning money, firing a gun, purchasing a gun, getting ammunition, learning to use tourniquets, and obtaining tactical gear.

     40.    The SUBJECT was processed, but the clothing he was wearing at the time of his arrest was not seized. Since his arrest, the SUBJECT has remained in custody:



41.    The SUBJECT's clothing is presently designated as prisoner's property at the D.C. Jail. There is probable cause to believe that the clothing items worn by the SUBJECT at the time of his offense would be useful evidence relevant to the TARGET OFFENSE, specifically including for the purpose of identification of the SUBJECT and for the SUBJECT's knowledge, intent, and lack of mistake at the time he committed the TARGET OFFENSE.

## **CONCLUSION**

42.    I submit that this affidavit supports probable cause for a warrant to search the

premises described in Attachment A and to seize the items described in Attachment B.

Respectfully submitted,

PETER CAMPOPIANO
Special Agent
United States Capitol Police

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) by telephone on
February 20, 2026.

THE HONORABLE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

14